IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*In re* A&F ENTERPRISES, INC. II, *et al.*,  ) 13 C 7020
        Debtors. ) Judge Virginia M. Kendall

## MEMORANDUM OPINION AND ORDER

Appellant Debtors A&F Enterprises, Inc. II, *et al.*,[1] ("Debtors") have moved this Court for an emergency stay of enforcement of an order of the Bankruptcy Court pending appeal, pursuant to Federal Rule of Bankruptcy Procedure 8005. For the reasons stated, Debtors' Motion to Stay is denied.

## PROCEDURAL HISTORY

The Debtors are companies that operate franchised International House of Pancakes ("IHOP") restaurants. On February 28, 2013, (the "Petition Date") Debtors filed voluntary petitions for bankruptcy under Chapter 11 of the United States Bankruptcy Code. On August 5, 2013, the Bankruptcy Court entered an order determining that each of the Debtors' subleases for commercial real property on which the Debtors' franchise restaurants are located had been deemed rejected under 11 U.S.C. § 365(d)(4) effective as of June 28, 2013, 120 days following the Petition Date. [See Bankr. Dkt. #212]. On September 18, 2013, the Bankruptcy Court denied Debtors' motion to reconsider the August 5, 2013 order. On September 23, 2013, based

---

[1] The Debtors in the consolidate Chapter 11 cases pending before the Bankruptcy Court are A&F Enterprises, Inc. II; AbuBecker, Inc.; AEA Enterprises, Inc.; AEE Enterprises, Inc.; East Peoria Enterprises, Inc.; Elham, Inc.; ElSayed, Inc.; Fatma Enterprsies, Inc.; Halima I, Inc.; Mahmoud, Inc.; Sabah Restaurant, Inc.; Westchester Enterprise, Inc; and Ali Alforookh.

1

on its ruling deeming the subleases to be rejected, the Bankruptcy Court entered an order determining that the Debtors' franchise agreements and equipment leases for the operation of the IHOP restaurants were deemed expired. On September 24, 2013, the Bankruptcy Court denied Debtors' emergency motion to stay enforcement of the orders deeming the subleases rejected and the franchise agreements expired. The Bankruptcy Court expressed the bases for its denial of a stay in a lengthy oral ruling.

## STANDARD OF REVIEW

On a motion to stay an order of the Bankruptcy Court pending appeal pursuant to Bankruptcy Rule 8005, the movant bears a heavy burden to prevail. "In considering whether to grant a stay pending appeal under Bankruptcy Rule 8005, courts consider the following four factors: 1) whether the appellant is likely to succeed on the merits of the appeal; 2) whether the appellant will suffer irreparable injury absent a stay; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest." *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). The factors mirror those for application for a preliminary injunction, in that the movant must make a preliminary showing on the first two factors before the court moves to balance the relative harms considering all four factors in what is known as the "sliding scale" approach. *Id.* at 1301. However, unlike a standard preliminary injunction, in the context of a request for a stay pending appeal the applicants must "make a stronger threshold showing of likelihood of success on the merits" to meet their initial burden. *Id.* (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). The Debtors here must make "a substantial showing of likelihood of success, not merely the possibility of success, because they must

convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has committed reversible error." *Id.*

## DISCUSSION

*A. Likelihood of Success on the Merits*

In order to succeed on the merits Debtors must convince this Court that Judge Cassling committed reversible error in determining that 11 U.S.C. §365(d)(4) should apply to the non-residential property subleases, rather than the usual 11 U.S.C. § 365(d)(2). In denying Debtors' motion for stay in the Bankruptcy Court, Judge Cassling determined that there was not a likelihood of success on the merits. And as he stated in his ruling denying the stay, "I honestly don't think it's a close question." Judge Cassling did not commit error in making that determination.

Section 365(d)(4) has a 120-day bright line rule for assuming or rejecting non-residential leases, with the option for one 90-day extension. *See* 11 U.S.C. 365(d)(4). It is undisputed that Debtors did not request the extension. It is also undisputed that the subleases are non-residential commercial leases, the type of contract specifically addressed in § 365(d)(4), while the franchise agreements are "executory contracts" governed by § 365(d)(2). Debtors argue that because the subleases are intimately connected with the franchise agreements and the equipment leases, courts should therefore interpret the contracts together as one contract and afford the Debtors the longer timeframe for assumption or rejection additional time under § 365(d)(2).

As an initial matter, this Court remains mindful that the Seventh Circuit has recently made clear that bankruptcy courts should follow the plain language of the Bankruptcy Code when that language is unambiguous. *See Sunbeam Products, Inc. v. Chicago American Mfg., LLC,* 686 F.3d 372 (7th Cir. 2012). Addressing the interpretation of different subsections of §

365 than are at issue here, the *Sunbeam* court cautioned bankruptcy courts not to put equitable considerations above principles of statutory interpretation:

> What the Bankruptcy Code provides, a judge cannot override by declaring that enforcement would be 'inequitable.' There are hundreds of bankruptcy judges, who have many different ideas about what is equitable in any given situation … Rights depend, however, on what the Code provides rather than on notions of equity. Recently the Supreme Court emphasized that arguments based on views about the purposes behind the Code, and wise public policy, cannot be used to supersede the Code's provisions. It remarked: 'The Bankruptcy code standardizes an expansive (and sometimes unruly) area of law, and it is our obligation to interpret the Code clearly and predictably using well established principles of statutory construction.' *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, -- U.S. --, 132 S.Ct. 2065, 2073 (2012).

*Sunbeam*, 686 F.3d at 375-76. Debtors argue, however, that construing the contracts at issue here as a unified contract to be reviewed under § 365(d)(2) is appropriate, notwithstanding that such interpretation goes against the plain statutory language of § 365(d)(4), because, according to Debtors, every case that has reviewed this issue in the bankruptcy courts has viewed the intersection of franchise agreements and non-residential leases to be a unified issue and has applied § 365(d)(2).

There are several reasons that Debtors' position cannot stand. First, none of those cases to which Debtors cite are cases from this Circuit. This Court can consider those cases as persuasive authority, but in so doing cannot ignore this Circuit's cautionary language in *Sunbeam* regarding deviations from the statutory provisions of the Bankruptcy Code. Second, only one of the cases cited by Debtors, *In re FPSDA I, LLC*, 450 B.R. 392 (Bankr. EDNY 2011), was decided after the 2005 amendments to the Bankruptcy Code. The 2005 amendments changed § 365(d)(4) from a fixed period that could be extended indefinitely by the court for cause to the current structure with a strict fixed period that cannot be extended beyond 210 days without the consent of the lessor. *See* Pub. L. 109-8 § 404(a) (rewriting subparagraph (d)(4) of § 365). The

amendment of § 365(d)(4) to explicitly remove judicial authority to grant exceptions to the time period cautions against permitting an equitable end-run around the 210-day period by relying instead on § 365(d)(2).

Given *Sunbeam*, the decision of the *FPSDA* court to allow extension of § 365(d)(4) on equitable grounds does not square with precedent in this circuit. Additionally, the *FPSDA* court faced a factual scenario significantly different from that before this Court. The *FPSDA* debtors sought the 90-day extension permitted by § 365(d)(4), and when the extension period ran, got consent from most lessors to permit continued negotiation over the leases alongside other executory contracts. *FPSDA*, 450 B.R. at 396. Here, by contrast, the Debtors did not seek the 90-day extension to which they are entitled in order to bring their plan closer to fruition. And unlike the landlord in *FPSDA*, who refused consent late in the process when the court saw an opportunity to achieve a consensual resolution with all creditors, *FPDSA*, 450 B.R. at 401, in this instance IHOP has been clear throughout the case that that it does not want the franchise relationship to continue.

Debtors argue that the 90-day extension permitted in § 365(d)(4) would not have mattered in this case, because even with the extension Debtors could not have obtained confirmation of their timely filed plan of reorganization. But Debtors' argument that the (d)(4) period should be overridden by (d)(2) might have been more persuasive if the Debtors had plan confirmation soundly on the horizons, which might have been the case had the Debtors taken advantage of the 90-day extension. They did not do so. In any event, Judge Cassling's comment at the close of his oral ruling denying the stay, that perhaps the Debtors should have construed the integrated contract as a lease under § 365(d)(4) rather than operating as if the integrated contract were an executory contract under § 365(d)(2), is supported by common sense:

5

if some of the contracts at issue unequivocally fall under (d)(2) and others under (d)(4), it would have behooved the Debtors to be risk averse and try to comply with the more restrictive of the two dates. The fact that the Debtors did not do so here does not entitle them to now seek a stay of enforcement of the judgment against them.

    *B. Irreparable Harm*

In addition to showing a strong likelihood of success on the merits, Debtors must make an initial showing that denial of the motion to stay enforcement would cause Debtors irreparable harm. Debtors have not met that burden in this matter. Debtors' first argument, that the reorganization of the Debtors will be impossible if the subleases are rejected, is not a permissible reason to grant a stay. The fact that an appeal from bankruptcy would be moot absent a stay does not alone constitute irreparable harm. *See, e.g., Matter of 203 N. LaSalle P'ship*, 190 B.R. 595, 598 (Bankr. N.D. Ill. 1995). If it did, every bankruptcy debtor that got an unfavorable ruling would have unlimited appeals due a negative effect on the reorganization process. Debtors' second argument, that the companies will lose their franchises and therefore their business, also has no merit; in the context of commercial disputes, the loss of franchises is a commercial loss that can be compensated with monetary damages. *See, e.g., Cal City Optical, Inc. v. Pearle Vision, Inc.*, 1994 WL 114859 (N.D. Ill. Mar. 29, 1994) (stay denied because "if the termination of [plaintiff's] franchise was wrongful, [plaintiff's loss] can therefore be readily compensated by money damages, based on the value of his lost investment and the business conducted by the store subsequent to the termination of his franchise."). Debtors' contention at oral argument before this Court that they could not finance a suit for wrongful termination of franchises is not a basis to grant a stay of the initial judgment. *See 7-Eleven, Inc. v. Spear*, 2011 WL 830069 (N.D. Ill. Mar. 3, 2011) (movant's "speculative inability to finance" litigation over lost revenue from a

wrongful franchise termination "does not weigh heavily" in the calculation of emergency stay) (citing *Roland Mach. Co. v, Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). Debtors have not provided a valid basis for finding irreparable harm to the Debtors in the event the stay is not granted.

      *C. Balancing the Harms*

Without having met the initial burden, this Court need not balance the harms between Debtors and IHOP. However, this Court is further persuaded by the fact that IHOP, the holder of the trademarks for the franchises at issue, has demonstrated irreparable harm if Debtors were to obtain a stay of enforcement of the Bankruptcy Court's ruling. "Irreparable harm is generally presumed in cases of trademark infringement and dilution." *Re/Max N. Cent. Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). IHOP had franchise agreements with Debtors that terminated due to cross-termination provisions between the subleases and the franchise agreements. If the Court were to grant the stay, Debtors would be able to continue to use IHOP's marks over IHOP's objections to Debtors' use of those marks in franchises IHOP contends are sub-par. "[The] willingness to find irreparable harm in trademark stems from an understanding that the 'most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *7-Eleven, Inc.*, 2011 WL 830069 (citing *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir 1988)). If Debtors were to be permitted to continue to operate the stores on the property subject to the subleases, which have signage, logos, and other trademarked items, with the franchise agreements now terminated, IHOP would not have control over what products and services were provided at those locations. *See Re/Max*, 272 F.3d at 432 (if franchisee continued to use franchisor's logos and marks against its will, franchisor "has no quality [control] over the

services [franchisee] provides or potential harm to its goodwill"); *accord PP & K, Inc. v. McCumber*, 46 F.3d 1134 at *3 (7th Cir. Feb. 6, 1995) (unpublished) (franchisor would suffer irreparable harm from lost goodwill association with a franchised location if the franchisee were not ordered to vacate the premises).

   *D. Public Interest*

   Finally, the public interest would not be served by granting a stay of enforcement. As stated above, the 2005 Amendments to the Bankruptcy Code amended § 365(d)(4) to give lessors consent rights over extensions of the time period for a lessee to assume or reject a non-residential commercial lease beyond 210 days. The specific nature of the change, which removed judicial discretion to extend the time period, suggests that Congress intended to curtail judicial authority to extend the period further; allowing lessees to avoid the change to § 365(d)(4) by grouping the leases with other executory contracts in order to take advantage of the longer period provided in § 365(d)(2) does not appear to follow Congressional intent in tightening the language of §365(d)(4). Coupled with the strong and well-settled public policy that protects trademark holders from involuntary use of their marks, the public interest in this instance does not favor a stay of enforcement of the termination of the subleases.

## CONCLUSION

   For the reasons stated herein, Debtors' motion to stay enforcement of the Bankruptcy Court's order is denied.

 _____
 Virginia M. Kendall
 United States District Court Judge
 Northern District of Illinois

Date: October 8, 2013